James W. **WILLIAMS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 9022.

United States Court of Appeals Tenth Circuit.

Jan. 9, 1967.

---

1. Chapter 769, Florida Statutes, F.S.A.

John C. Humpage, Topeka, Kan., for appellant.

Newell A. George, U. S. Atty., and Benjamin E. Franklin, Asst. U. S. Atty., for appellee.

Before BREITENSTEIN and HILL, Circuit Judges, and KERR, District Judge.

KERR, District Judge.

This is an appeal from a judgment of the United States District Court for the District of Kansas entered after a trial by jury and a verdict of guilty. The appellant was sentenced to the custody of the Attorney General of the United States for a period of four years, to be eligible for parole as provided in 18 U.S.C. § 4208 (a) (2). The information charged that appellant wilfully, unlawfully and feloniously transported in interstate commerce a stolen 1964 Cadillac knowing it to have been stolen, in violation of 18 U.S.C. § 2312.

Appellant's grounds for appeal are that the verdict was contrary to and not supported by substantial evidence, that the statements of the prosecutor and the conduct of the Court during the summation were in error, and that the trial court improperly instructed the jury that possession of recently stolen property gives rise to the presumption that the person in possession thereof knew that it had been stolen and transported it across state lines.

■■ It is within the province of the jury to weigh the evidence and determine the credibility of the witnesses. This court is required only to determine

whether the facts constitute substantial proof of the guilt of the appellant.[1] We believe that the evidence was clearly sufficient to sustain the jury's verdict. At 6:30 p. m. on the evening of October 24, 1964, appellant was in Joplin, Missouri. About 7:30 that evening he was seen in Donna's Bo-Peep Club in Joplin, which is adjacent to the Black Orchid Club. Between 7:30 or 7:45 p. m., the owner of a 1964 white Cadillac parked it in the Black Orchid parking lot, leaving his keys in the car above the visor.

Between approximately 8:00 p. m. and 9:30 p. m., appellant was seen driving this white Cadillac in Galena, Kansas. About 8:00 or 8:30 p. m. the Sheriff of Cherokee County, Kansas, saw appellant driving this vehicle on the main street in Galena, and at the Teen Town. The Deputy Sheriff saw him driving the car in front of the Teen Town. Appellant talked with the Deputy Sheriff and then went across the street to the drugstore for a coke. About 8:20 p. m. an employee of the Galena police department saw appellant get out of the Cadillac and walk into the Teen Town. The Galena Chief of Police saw appellant at the Teen Town and talked with him. A witness who had known appellant all his life saw him drive into the parking lot at the Mile-A-Way Club in Galena about 9:00 or 9:30 p. m. The owner and operator of the Mile-A-Way Club testified that she, too, had talked with appellant while he was at the Club.

About 9:30 or 9:45 p. m. on the same evening the owner of the Cadillac discovered that it was missing from the parking lot in Joplin, Missouri, and reported it to the police. He subsequently recovered his car at the Mile-A-Way Club, west of Galena, Kansas. Appellant was arrested about 10:00 p. m., at the Mile-A-Way Club.

Appellant has not offered any satisfactory evidence to explain his possession of the stolen Cadillac in Galena, Kansas.

He testified that he drove from Joplin to Galena with a man named Bill. Bill did not testify. Appellant claimed that his friend, Arlene Rogers, came to see him at the Mile-A-Way Club in Galena; that she lent him her 1964 Cadillac to visit his long time friend, the Chief of Police, at the Teen Town; and that he returned the car and its keys to Arlene at the Mile-A-Way Club. Arlene did not testify. Appellant said that two men were sitting in the booth with Arlene Rogers when he returned her car keys and thanked her for allowing him to use her car. He did not identify the men. They did not testify.

■■ The actual theft of the automobile and the transportation from Joplin, Missouri, to Galena, Kansas, are established by circumstantial evidence. The commission of a crime may be established by circumstantial evidence.[2] There was substantial evidence to exclude every reasonable hypothesis other than that of the guilt of the appellant. Appellant and the Cadillac had been in Joplin, Missouri, at the same time and in the same vicinity; the Cadillac was stolen from its location in Joplin on October 24, 1964; that same evening appellant was seen driving the Cadillac in Galena, Kansas. There was direct proof that appellant had possession of the stolen Cadillac in Galena, Kansas. The law enforcement officers in Galena had made a note of the Missouri license number CX 8–374 on the 1964 Cadillac which they saw appellant driving around town. Upon contacting the chief radio dispatcher for the Joplin Missouri Police Department, it was revealed that the 1964 Cadillac bearing the Missouri license number CX 8–374 was owned by Mr. Bill Finex of Joplin, Missouri. About 10:00 o'clock that evening Mr. Finex reported to the Joplin Missouri Police Department that his car had been stolen from the Black Orchid parking lot in Joplin.

1. See, Hall v. United States and four other cases, 10 Cir., 109 F.2d 976 (1940).

2. Real v. United States of America, and Vigil v. United States of America, 10 Cir., 326 F.2d 441 (1963), and cases cited therein.

■ We have held innumerable times that where it is proved that the accused has in his possession a vehicle recently stolen in another state, the inference is sustained that the accused knew the vehicle was stolen and that he transported it in interstate commerce.[3] That rule was the essence of the Court's instruction to the jury about which appellant complains.[4] There is a rational connection between the proved fact of possession of the stolen vehicle and the ultimate facts presumed. Actual participation in the theft and interstate transportation is difficult and almost impossible to prove due to the ease with which automobiles are surreptitiously purloined and driven across state lines. Reason and common sense dictate the inference that the accused committed the illegal acts prohibited by 18 U.S.C. § 2312 when he is in possession of the stolen automobile— when, as in this case, he is seen driving it in another state immediately after it has been stolen.[5]

■ The role of the jury as the trier of facts was not disturbed by the trial court's instruction. It was specifically told that possession of the stolen property was "a circumstance" from which the jury could draw the inference and find "in the light of surrounding circumstances shown by the evidence in the case" that the appellant in possession of the automobile knew that it was stolen and that he transported it or caused it to be transported in interstate commerce. By its instruction, the court cautioned the jury that the inference was not conclusive. It was instructed to consider all the facts and circumstances in the case, and it was free to exonerate the appellant if it believed his story about Bill and Arlene. Such instruction was proper; it did not violate any rights of the appellant.

■■ The trial court committed no prejudicial error in overruling the appellant's objections to the statements of the prosecutor that appellant "got fresh with Mrs. Schumaker", that he had just come out of the penitentiary and was "looking for females", and that "he wanted the extra girl at the table". In the light of the record these statements are not misstatements of fact and there is no showing that they were inflammatory or prejudicial. Under all the facts and circumstances of the case it cannot be said that the trial was unfair or that justice was sacrificed. Appellant's complaint of the trial court's reaction to the rabbit story in the prosecutor's summation to the jury is likewise untenable. The prosecutor's explanation of circumstantial evidence was a "metaphorical illusion" and was not so offensive as to deprive appellant of a fair trial. Although the appellant did not make timely objection to the rabbit story nor to the court's reaction, we have considered his tardy objections and find that he was not prejudiced by the story nor by the court's conduct and that he was not deprived of a fair, impartial trial.

The record shows that the fundamental rights of the appellant were not prejudiced, and the weight of the evidence unerringly points to his guilt. His conviction must be sustained.

Affirmed.

3. Allison v. United States of America, 10 Cir., 348 F.2d 152 (1965).

4. The portion of the court's instruction to which appellant objects reads as follows:
   "Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person knew the property had been stolen.
   And possession in one state of property recently stolen in another state, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession not only knew it to be stolen property, but also tranported it, or caused it to be transported in interstate commerce."

5. See United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), distinguished in United States v. Romano, et al., 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).